**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
(Northern Division)

| | | |
|---|---|---|
| THE ESTATE OF ROBERT ETHAN SAYLOR, Patricia Saylor & Ronald Saylor Co-Personal Representatives 6274 North Steamboat Way New Market, Maryland 21702 | * * * * | Civ. A. No.: _____ |
| and | * | |
| PATRICIA SAYLOR, 6274 North Steamboat Way New Market, Maryland 21702 | * * | |
| and | * | |
| RONALD SAYLOR, 8009 Runnymede Drive Frederick, Maryland 21702 | * * | |
| Plaintiffs, | * | |
| v. | * | |
| REGAL CINEMAS, INC., 7132 Commercial Park Drive Knoxville, Tennessee 37918 | * * | |
| Serve on: The Corporation Trust, Inc. 351 W. Camden Street Baltimore, Maryland 21201 | * * | |
| and | * | |
| RICHARD ROCHFORD, Law Enforcement Center 110 Airport Drive East Frederick, Maryland 21701 | * * | |
| and | * * | |

| | |
|---|---|
| SCOTT JEWELL,<br>Law Enforcement Center<br>110 Airport Drive East<br>Frederick, Maryland 21701 | *<br>*<br> |
| and | * |
| JAMES HARRIS,<br>Law Enforcement Center<br>110 Airport Drive East<br>Frederick, Maryland 21701 | *<br><br>*<br><br>* |
| and | * |
| | * |
| HILL MANAGEMENT SERVICES, INC.,<br>9640 Deereco Road<br>Timonium, Maryland 21093 | *<br><br>* |
| Serve on:<br>Michael L. Quinn<br>One South Street, 27th Floor<br>Baltimore, Maryland 21202 | *<br><br>* |
| and | * |
| THE FREDERICK COUNTY, MARYLAND<br>SHERIFF'S DEPARTMENT,<br>Frederick County<br>Law Enforcement Center<br>110 Airport Drive East<br>Frederick, Maryland 21701 | *<br><br>*<br><br>*<br><br>* |
| Serve on:<br>Charles Jenkins<br>Law Enforcement Center<br>110 Airport Drive East<br>Frederick, Maryland 21701 | *<br><br>* |
| and | * |
| FREDERICK COUNTY, MARYLAND,<br>12 East Church Street<br>Frederick, Maryland 21701 | *<br><br>* |

Serve on:
    John Mathias, Esq.                      *
    12 East Church Street
    Frederick, Maryland 21701     *

Defendants.                                       *

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## COMPLAINT AND DEMAND FOR A JURY TRIAL

Plaintiffs, Patricia Saylor and Ronald Saylor, individually and as personal representatives of the Estate of Robert Ethan Saylor, by their attorneys, Sharon Krevor-Weisbaum, Joseph B. Espo and Brown, Goldstein & Levy, LLP, for their Complaint state:

## INTRODUCTION

1.      On January 12, 2013, Robert Ethan Saylor, a 26-year-old man with Down Syndrome died at the hands of three off-duty Frederick County Sheriff's Deputies who had been summoned by Regal Cinemas to remove him from a theater where he was sitting quietly awaiting another showing of a movie he had just watched. If any of the Defendants had heeded Mr. Saylor's aide as to how to deal with Mr. Saylor, his tragic and unnecessary death would have been avoided.

## PARTIES

2.      The Estate of Robert Ethan Saylor was opened in Frederick County in March 2013, No. 36975. Patricia Saylor and Ronald Saylor are co-personal representatives.

3.      Patricia Saylor is a resident of Frederick County, Maryland, the mother of the late Robert Ethan Saylor, and a co-personal representative of the late Mr. Saylor's estate. She sues individually and for the Estate.

4. Ronald Saylor is a resident of Frederick County, Maryland, the father of the late Robert Ethan Saylor, and a co-personal representative of the late Mr. Saylor's estate. He sues individually and for the Estate.

5. Regal Cinemas, Inc. owns and operates Regal Cinemas Westview Stadium 16. The action of its employee in asking the three deputies to remove Mr. Saylor from the theater was negligent, grossly negligent or reckless, and resulted in the death of Mr. Saylor. Regal Cinemas, Inc. also is a joint employer of Defendants Richard Rochford, Scott Jewell, and James Harris.

6. On information and belief Richard Rochford is a resident of Frederick County, Maryland. He is employed full-time as a Frederick County Deputy Sheriff and on the night Mr. Saylor was killed was working as a security guard at Westview Promenade. Mr. Rochford's negligence, gross negligence, and recklessness resulted in the death of Mr. Saylor.

7. On information and belief Scott Jewell is a resident of Frederick County, Maryland. He is employed full-time as a Frederick County Deputy Sheriff and on the night Mr. Saylor was killed was working as a security guard at Westview Promenade. Mr. Jewell's negligence, gross negligence, and recklessness resulted in the death of Mr. Saylor.

8. On information and belief James Harris is a resident of Frederick County, Maryland. He is employed full-time as a Frederick County Deputy Sheriff and on the night Mr. Saylor was killed was working as a security guard at Westview Promenade. Mr. Harris's negligence, gross negligence, and recklessness resulted in the death of Mr. Saylor.

9. Hill Management Services, Inc. is the property manager of the Westview Promenade Mall and with Regal Cinemas was a joint employer of Defendants Rochford, Jewell,

and Harris.  Because Hill Management Services, Inc. was the employer of Rochford, Jewell, and Harris when their actions caused the death of Mr. Saylor, it is responsible for his death.

10. The Frederick County Sheriff's Department is a law enforcement agency located in Frederick County, Maryland.

11. Defendant Frederick County is a government entity in Maryland.

## JURISDICTION AND VENUE

12. This Court has jurisdiction over the claims brought under 42 U.S.C. § 1983 and the Americans with Disabilities Act ("ADA") pursuant to 28 U.S.C. §1331.  It has jurisdiction over the balance of Plaintiffs' claims pursuant to 28 U.S.C. § 1367.

13. Venue is appropriate under 28 U.S.C. § 1391 in that the events giving rise to this lawsuit all took place in Maryland and all defendants are located in Maryland.

## FACTS

14. Robert Ethan Saylor, known as Ethan, was 26 at the time of his death. Mr. Saylor had an I.Q. of about 40.  Ethan was a person with Down Syndrome.  He had physical and facial features common to individuals with Down Syndrome and was easily recognizable as someone with this disability.  Indeed, many witnesses to some of the events leading to Mr. Saylor's death told investigating deputies that Mr. Saylor appeared to have cognitive delays or, more generally, that he appeared to be "handicapped" in some way.

15. Mr. Saylor was both short and obese, being about 294 pounds and about 5 feet 6 inches tall.

16. Despite Mr. Saylor's cognitive delays he had attended school and was living happily in the Frederick County community.  Mr. Saylor lived in a separate apartment connected to his mother's home.  To assist Mr. Saylor in living in the community he received a variety of

support services. Among those supports was a full-time aide, Mary Crosby, employed by Mr. Saylor, through a self-directed Medicaid waiver program. Under that program, Mr. Saylor had his own Employer Information Number for tax reporting purposes.

17. Mr. Saylor had a fascination with law enforcement officers and agencies. He had at various times visited the Frederick County Sheriff's Department and had even helped wash the department's patrol vehicles. Mr. Saylor also knew how to call 911 and would sometimes do so simply so he could talk with police officers and Sheriff's deputies.

18. To thank the Frederick County Sheriff's Department for its previous dealings with her son, Patricia Saylor had delivered cookies to the Department during the Christmas season prior to his death. Through Mr. Saylor's actions he had become known to a number of the Sheriff's deputies.

19. Mr. Saylor was also an enthusiastic moviegoer and had been a regular patron of Regal Cinemas Westview Stadium 16.

20. Mr. Saylor did not like being touched, particularly by strangers. This was known to Ms. Crosby, other caretakers, and family members. He had also sometimes displayed anger when he was frustrated and could be difficult to redirect from one activity to another.

21. On the evening of January 12, 2013 Mr. Saylor and Ms. Crosby went to the Westview Regal Cinemas at Westview Promenade in Frederick County to see the movie <u>Zero Dark Thirty</u>. Mr. Saylor had seen hundreds of movies at that theater. At the conclusion of the movie, Mr. Saylor and his aide left the theater and went outside. When Ms. Crosby asked Mr. Saylor if he was ready to return home he became angry. Ms. Crosby then called Mr. Saylor's mother for advice. Mrs. Saylor suggested Ms. Crosby should bring her car around to give Ethan the chance to calm down. Mr. Saylor's care plan did not require that his aide be at his

6

side or within his line of sight at all times. Because Ms. Crosby's conduct was permitted under the care plan and, since Mrs. Saylor's advice was sound, Ms. Crosby did as Mr. Saylor's mother suggested.

22. On her return to the theater, Ms. Crosby discovered that Mr. Saylor had gone back inside the movie theater to see the movie a second time. While she was in the lobby Ms. Crosby was approached by the theater manager and told that Mr. Saylor either needed to purchase another ticket or leave. Ms. Crosby explained to the manager that Mr. Saylor had Down Syndrome and requested that the manager simply wait a bit to allow her to deal with Mr. Saylor's desire to stay. She also explained that no one should attempt to speak with Mr. Saylor.

23. Ms. Crosby was then approached by a Sheriff's Deputy, believed to be Defendant Rochford, who said Mr. Saylor had to leave the theater or purchase another ticket. She told the Deputy about Mr. Saylor's disability and asked again that they just "wait out" Mr. Saylor's refusal to leave the theater. She told the deputy that she had spoken with Mr. Saylor's mother, who was coming to the theater, and that Mr. Saylor would "freak out" if he was touched and that he would resist being forcibly ejected. She told the deputy that if given sufficient time she and Mrs. Saylor could handle the situation.

24. When Mr. Saylor returned to the theater he went to the same seat from where he watched the movie earlier, which was in the row immediately behind a railing in the upper part of the theater. That was the same general location where Mr. Saylor sat whenever he attended a movie at Regal Cinemas, where each of the screens has the same general seating configuration. Until others attempted to get Mr. Saylor to leave, he was, as attested to by numerous witness accounts, sitting quietly in his seat not causing any disturbance or disruption. During the time he was in his seat Mr. Saylor called directory information several times, dialing "411."

25. Despite the advice of Ms. Crosby, Deputy Rochford told Mr. Saylor he had to leave the theater, which Mr. Saylor refused to do.

26. The original deputy on the scene asked the theater manager to call for the assistance of two other off-duty sheriff's deputies who were working mall security, saying "we are gonna have an issue here." The deputies then approached Mr. Saylor and told him he had to leave. Before starting the confrontation with Mr. Saylor, the deputies ordered Ms. Crosby to stay out of the theater, thus preventing her from trying to calm Mr. Saylor.

27. When Mr. Saylor refused to leave the theater, two of the three deputies grabbed Mr. Saylor, one by each arm, and tried to drag him from the theater while telling him he was going to jail. As they neared the rear of the theater with the struggle underway the Deputies handcuffed Mr. Saylor with his hands behind his back. Mr. Saylor was heard to scream "mommy, mommy" and say "it hurts."

28. At the back of the theater, Mr. Saylor – handcuffed and held by the deputies – ended up on the floor with at least one deputy on top of him. As the deputies manhandled Mr. Saylor, they fractured his larynx making it difficult for him to breathe. Because this was apparent, the deputies rolled him to his side, removed his handcuffs, and called emergency medical technicians. It was too late – Mr. Saylor suffocated.

29. Mr. Saylor was pronounced dead at Frederick Memorial Hospital at approximately 11:58 p.m. on January 12, 2013.

30. On February 15, 2013 the Office of the Chief Medical Examiner of Maryland ruled Mr. Saylor's death a homicide; that is, a death at the hands of another.

31. As a result of the actions of the theater, its manager, the three individual deputies, and the Frederick County Sheriff's Department, Robert Ethan Saylor died a violent, terrifying, and painful death.

32. As a direct consequence of Defendants' conduct, Ronald and Patricia Saylor have suffered an immense loss of the affection, love, and companionship of their son.

## CAUSES OF ACTION

### COUNT I
### Negligence-Survival Action
### (Estate of Robert Ethan Saylor v. Regal Cinemas, Inc.)

33. Plaintiff, the Estate of Robert Ethan Saylor, incorporates by reference the allegations of all preceding paragraphs as if set out again.

34. Defendant Regal Cinemas, Inc., d/b/a Westview Regal Cinemas is a place of public accommodation under Title III of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA" or "Title III"). Robert Ethan Saylor was a person with a disability as that term is defined in the ADA.

35. Pursuant to Title III, places of public accommodation are required to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford their goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities.

36. The failure of Westview Regal Cinemas to modify its policies, practices, and procedures to permit Mr. Saylor the time and assistance he required to leave the movie theater (or to have his aide or mother buy him another $12.00 ticket) without the intervention of law enforcement was negligent. That negligence by Westview and its employees was the proximate cause of the subsequent events which led to the death of Mr. Saylor.

37.     As the direct and proximate result of Defendant's negligence, Robert Ethan Saylor sustained severe conscious pain and suffering between the time of the initiation of his encounter with the sheriff's deputies to his death.

38.     Mr. Saylor was not contributorily negligent.

## COUNT II
### Negligence-Survival Action
### (Estate of Robert Ethan Saylor v. Defendants Rochford, Jewell, and Harris)

39.     Plaintiff, the Estate of Robert Ethan Saylor, incorporates by reference the allegations of all preceding paragraphs as if set out again.

40.     The failure of Defendants Rochford, Jewell, and Harris to comply with the mandate of Title III when they attempted to remove Mr. Saylor from the movie theater for Westview Regal Cinema was negligent.

41.     The conduct of Defendants Rochford, Jewell, and Harris in attempting to remove Mr. Saylor from the theater despite having been informed:  of his having Down Syndrome; of the need to give him time to calm himself; of Mr. Saylor's reaction to being touched; and of the imminent arrival of his mother was negligent.

42.     The conduct of Defendants Rochford, Jewell, and Harris in attempting to remove Mr. Saylor from the theater despite their knowing or having reason to know that he was developmentally disabled and not posing a threat to himself or others was negligent.

43.     The risks of asphyxiation of individuals being handcuffed are well known in the law enforcement community.  Deaths resulting from what is called positional asphyxia and excited delirium are a documented hazard of handcuffing excited individuals with their hands behind their back, particularly those who are obese.

44. Defendants Rochford, Jewell, and Harris knew, had reason to know, or should have known of the risks of positional asphyxia and excited delirium.

45. The conduct of Defendants Rochford, Jewell, and Harris in handcuffing Mr. Saylor with his hands behind his back despite his obesity and the risk of death to him was negligent.

46. The negligence of Defendants Rochford, Jewell, and Harris, as set out above, proximately and foreseeably caused the death of Robert Ethan Saylor.

47. As the direct and proximate result of Defendants' negligence, Robert Ethan Saylor sustained severe conscious pain and suffering between the time of the initiation of his encounter with the sheriff's deputies to his death.

## COUNT III
### Negligence-Survival Action
### (Estate of Robert Ethan Saylor v. Defendant Hill Management Services, Inc.)

48. Plaintiff, the Estate of Robert Ethan Saylor, incorporates by reference the allegations of all preceding paragraphs as if set out again.

49. As a joint employer of Defendants Rochford, Jewell, and Harris, Defendant Hill Management Services, Inc. is liable in *respondeat superior* for the negligence of Defendants Rochford, Jewell, and Harris.

50. As the direct and proximate result of the negligence of this Defendant's agents, Robert Ethan Saylor sustained severe conscious pain and suffering between the time of the initiation of his encounter with the sheriff's deputies to his death.

## COUNT IV
### Gross Negligence-Survival Action
### (Estate of Robert Ethan Saylor v. Defendant Regal Cinemas, Inc.)

51. Plaintiff, the Estate of Robert Ethan Saylor, incorporates by reference the allegations of all preceding paragraphs as if set out again.

52. In directing Defendants Rochford, Jewell, and Harris to remove Mr. Saylor from its theater despite knowing that he had Down Syndrome and despite having been told that Mr. Saylor needed some time to calm himself and that he would react negatively or freak out if touched, Defendant Regal Cinemas, Inc. demonstrated that it was indifferent to Mr. Saylor's right to live and acted with reckless disregard for the consequences to Mr. Saylor's life and safety.

53. Defendant Regal Cinemas, Inc.'s conduct in acting with reckless disregard for Mr. Saylor's life and health constituted gross negligence.

54. As the direct and proximate result of Defendant's gross negligence, Robert Ethan Saylor sustained severe conscious pain and suffering between the time of the initiation of his encounter with the sheriff's deputies to his death.

## COUNT V
### Gross Negligence-Survival Action
### (Estate of Robert Ethan Saylor v. Defendants Rochford, Jewell, and Harris)

55. Plaintiff, the Estate of Robert Ethan Saylor, incorporates by reference the allegations of all preceding paragraphs as if set out again.

56. The conduct of Defendants Rochford, Jewell, and Harris in attempting to remove Mr. Saylor from the theater despite having been informed: of his having Down Syndrome, of the need to give him time to calm himself, of his reaction to being touched, and of the imminent arrival of his mother was grossly negligent.

57. The conduct of Defendants Rochford, Jewell, and Harris in attempting to remove Mr. Saylor from the theater despite their knowing or having reason to know that he was developmentally disabled and not posing a threat to himself or others was grossly negligent.

58. The risks of asphyxiation of individuals being handcuffed are well known in the law enforcement community. Deaths resulting from what is called positional asphyxia and

excited delirium are a documented hazard of handcuffing excited individuals with their hands behind their back, particularly those who are obese.

59.     Defendants Rochford, Jewell, and Harris knew, had reason to know, or should have known of the risks of positional asphyxia and excited delirium.

60.     The conduct of Defendants Rochford, Jewell, and Harris in handcuffing Mr. Saylor with his hands behind his back despite his obesity and the risk of death to him was grossly negligent.

61.     The gross negligence of Defendants Rochford, Jewell, and Harris, as set out above, proximately and foreseeably caused the death of Robert Ethan Saylor.

62.     As the direct and proximate result of Defendants' gross negligence, Robert Ethan Saylor sustained severe conscious pain and suffering between the time of the initiation of his encounter with the sheriff's deputies to his death.

## COUNT VI
### Gross Negligence-Survival Action
### (Estate of Robert Ethan Saylor v. Defendant Hill Management Services, Inc.)

63.     Plaintiff, the Estate of Robert Ethan Saylor, incorporates by reference the allegations of all preceding paragraphs as if set out again.

64.      As the joint employer of Defendants Rochford, Jewell, and Harris, Defendant Hill Management Services, Inc. is liable in *respondeat superior* for the gross negligence of Defendants Rochford, Jewell, and Harris.

65.     As the direct and proximate result of the gross negligence of Defendant's agents, Robert Ethan Saylor sustained severe conscious pain and suffering between the time of the initiation of his encounter with the sheriff's deputies to his death.

## COUNT VII
### Battery-Survival Action
**(Estate of Robert Ethan Saylor v. Defendants Rochford, Jewell, and Harris)**

66. Plaintiff, the Estate of Robert Ethan Saylor, incorporates by reference the allegations of all preceding paragraphs as if set out again.

67. The conduct of Defendants Rochford, Jewell, and Harris in first attempting to remove Mr. Saylor from Regal Cinemas and then in physically confronting him, handcuffing him, throwing him to the floor, and fracturing his larynx constituted an intentional unwelcome and unprivileged touching of Mr. Saylor, and was undertaken deliberately and with actual malice.

68. As a direct, proximate, and consequential result of the conduct of Defendants Rochford, Jewell, and Harris, described above, Robert Ethan Saylor endured severe conscious pain and suffering between the time of the initiation of his encounter with the sheriff's deputies to his death.

## COUNT VIII
### Battery-Survival Action
**(Estate of Robert Ethan Saylor v. Defendant Hill Management Services, Inc.)**

69. Plaintiff, the Estate of Robert Ethan Saylor, incorporates by reference the allegations of all preceding paragraphs as if set out again.

70. As the joint employer of Defendants Rochford, Jewell, and Harris, Defendant Hill Management Services, Inc. is liable in *respondeat superior* for the battery committed by Defendants Rochford, Jewell, and Harris.

71. As the direct and proximate result of the battery committed by Defendant's agents, Robert Ethan Saylor sustained severe conscious pain and suffering between the time of the initiation of his encounter with the sheriff's deputies to his death.

## COUNT IX
### Section 1983-Survival Action
### (Estate of Robert Ethan Saylor v. Defendants Rochford, Jewell, and Harris)

72. Plaintiff, the Estate of Robert Ethan Saylor, incorporates by reference the allegations of all preceding paragraphs as if set out again.

73. The arrest of Robert Ethan Saylor was at all times unjustified and constituted an unnecessary and unreasonable use of force by Defendants Rochford, Jewell, and Harris.

74. Plaintiff sues each and all Defendants Rochford, Jewell, and Harris in their individual capacity.

75. At all times relevant to this action, Defendants Rochford, Jewell, and Harris were duly appointed sheriff's deputies employed by the Frederick County Sheriff's Department of the State of Maryland. The arrest of Robert Ethan Saylor arose out of Defendants' status as duly appointed state agents authorized to enforce the laws of the State of Maryland. Accordingly, Defendants Rochford, Jewell, and Harris were acting under color of state law.

76. Defendants Rochford, Jewell, and Harris, while acting under color of law, deprived Robert Ethan Saylor of rights and privileges secured to him by the Constitution and laws of the United States, in violation of 42 U.S.C. § 1983. Specifically, Defendants Rochford, Jewell, and Harris deprived Robert Ethan Saylor of his right under the Fourth Amendment to the United States Constitution to be free from unreasonable seizures and the use of unreasonable force.

77. Defendants Rochford, Jewell, and Harris knew that Robert Ethan Saylor suffered from Down Syndrome and should have known that any use of force was objectively unreasonable in light of the totality of the circumstances.

78. Defendants Rochford, Jewell, and Harris knew or should have known that applying forceful pressure to a suspect's back causes death from positional asphyxia.

79. At no time was Robert Ethan Saylor under suspicion of committing a serious crime. At no time did Robert Ethan Saylor possess a weapon or pose an immediate threat to Defendants Rochford, Jewell, or Harris or anyone else.

80. Defendants Rochford, Jewell, and Harris knew or should have known that their actions violated clearly established law of which a reasonable sheriff's deputy would have known.

81. At all times relevant to this action, Defendants Rochford, Jewell, and Harris were off-duty from their sheriff's job working for a secondary employer.

82. As the direct and proximate result of the actions of Defendants Rochford, Jewell, and Harris, including the use of unnecessary and unreasonable force leading to death, Robert Ethan Saylor sustained severe conscious pain and suffering between the time of the initiation of his encounter with the Defendants to his death.

## COUNT X
## ADA Title II – Survival Action
### (Estate of Robert Ethan Saylor v. Defendants Frederick County, Maryland and the Frederick County Sheriff's Department)

83. Plaintiff, the Estate of Robert Ethan Saylor, incorporates by reference the allegations of all preceding paragraphs as if set out again.

84. Pursuant to Title II of the ADA each state and local government and each agency of such a government is obligated to evaluate its current services, policies, and practices, and their effects, that do not or may not meet the requirements of Title II of the ADA, and if modification of services, policies, and practices is needed to achieve compliance, make the necessary modifications.

85. To assure compliance with the ADA, local and state governments should conduct training of their employees. In that way, each state and locality and each instrumentality of such a state or locality can assure that individuals with disabilities are provided services in a manner that complies with the ADA.

86. On information and belief neither Frederick County nor the Frederick County Sheriff's Department has any training for its deputies in how to interact with developmentally disabled individuals.

87. On information and belief neither Frederick County nor the Frederick County Sheriff's Department has any policy, procedure, manual, general order, or other guidance for their deputies in how to interact with and provide services to individuals with developmental disabilities.

88. The failure of Defendants Frederick County and the Frederick County Sheriff's Department to properly train Defendants Rochford, Jewell, and Harris in how to interact with and provide services to individuals with developmental disabilities violated Title II of the ADA.

89. Defendants' violation of Title II of the ADA proximately caused the death of Robert Ethan Saylor.

90. Defendants' violations of the ADA caused Robert Ethan Saylor to sustain severe conscious pain and suffering between the time of the initiation of his encounter with the sheriff's deputies to his death.

### COUNT XI
### ADA Title II - Survival Action
**(Estate of Robert Ethan Saylor v. Defendants Frederick County, Maryland and The Frederick County Sheriff's Department)**

91. Plaintiff, the Estate of Robert Ethan Saylor, incorporates by reference the allegations of all preceding paragraphs as if set out again.

92. By their conduct in attempting to remove Mr. Saylor from Westview Regal Cinemas, Defendants Rochford, Jewell, and Harris violated Title II of the ADA.

93. As a joint employer of Defendants Rochford, Jewell, and Harris, Defendants Frederick County and the Frederick County Sheriff's Department are liable for their acts done in violation of Title II of the ADA.

94. The acts done in violation of Title II of the ADA, as set out above, proximately caused the death of Robert Ethan Saylor.

95. Defendants Rochford, Jewell, and Harris's violations of the ADA caused Robert Ethan Saylor to sustain severe conscious pain and suffering and fright between the time of the initiation of his encounter with the sheriff's deputies to his death.

## COUNT XII
## WRONGFUL DEATH
### (Patricia Saylor and Ronald Saylor v. All Defendants)

96. Plaintiffs, Patricia Saylor and Ronald Saylor, individually, incorporate by reference the allegations of all preceding paragraphs as if set out again.

97. Plaintiffs, Patricia Saylor and Ronald Saylor, are the parents of decedent Robert Ethan Saylor.

98. At the time of his death, decedent was an unmarried resident of Frederick County with no children.

99. Plaintiffs are both primary beneficiaries in this action pursuant to Md. Code Ann., Cts. & Jud. Proc. § 3-904. On information and belief there are no other individuals entitled by law to recover damages for Mr. Saylor's death.

100. By the wrongful acts set out above, Defendants caused the death of Robert Ethan Saylor.

101. As a direct and proximate result of Defendants' wrongful acts in causing the death of Robert Ethan Saylor, Patricia Saylor and Ronald Saylor sustained mental anguish, emotional pain and suffering, loss of society, loss of companionship, and loss of comfort.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray that the Court:

(a) Award compensatory damages to Plaintiffs Patricia and Ronald Saylor and the Estate of Robert Ethan Saylor, jointly and severally, against all defendants; and;

(b) Award punitive damages to Plaintiffs Patricia and Ronald Saylor and the Estate of Robert Ethan Saylor, jointly and severally, against all defendants; and

(c) Award the Estate of Robert Ethan Saylor attorneys' fees and costs pursuant to 42 U.S.C. § 12205; and

(d) Issue any and all other further relief as this Court may deem just and proper.

Respectfully submitted,

/s/
Sharon Krevor-Weisbaum (Fed. Bar No. 04773)
Joseph B. Espo (Fed. Bar No. 07490)
BROWN, GOLDSTEIN & LEVY, LLP
120 E. Baltimore Street, Suite 1700
Baltimore, Maryland 21202
T:  (410) 962-1030
F:  (410) 385-0869
skw@browngold.com
jbe@browngold.com

*Attorneys for Plaintiffs*

Dated:  October 17, 2013

## **DEMAND FOR JURY TRIAL**

Plaintiffs hereby request a jury trial.

                                              /s/
                                        Joseph B. Espo